IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

IN RE:
Solv-Ex Corporation,
        Debtor.

SOLV-EX CORPORATION,

        Plaintiff-Appellee

v.                                                              No. CIV. 97-1201 MV/RLP

United States Securities
& Exchange Commission,

        Defendant-Appellant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Appellant's Amended Motion for Leave to Appeal, filed November 28, 1997 **[Doc. No. 31]**. The Court, having considered the pleadings, relevant law, and being otherwise fully informed, finds that the motion is not well taken and will be **denied**.

### Background

On March 26, 1996, the Securities and Exchange Commission ("SEC") initiated an investigation of Solv-Ex Corporation to determine whether Solv-Ex violated registration and anti-fraud provisions of federal securities law. Solv-Ex is a New Mexico corporation, currently a debtor in possession, having filed for bankruptcy protection on August 1, 1997 in the District of

New Mexico.  Solv-Ex is in the business of researching and developing processes for, and extracting and refining petroleum, metals, and minerals.  Solv-Ex claims that its principal assets, and thus the assets of the bankruptcy estate, are its secret processes, confidential research and development, and extractive technologies.  During its investigation, the SEC sought and obtained certain documents from Solv-Ex which the latter considers to be proprietary information or trade secrets.  When producing the documents, Solv-Ex requested that the SEC treat them as confidential.

There is some dispute as to whether the SEC assured Solv-Ex that it would protect confidential information from possible competitors.  The SEC's attorney maintains that she never offered any guarantees to Solv-Ex, beyond explaining that Solv-Ex was entitled to the protection afforded by the Freedom of Information Act.  Under SEC regulations, the SEC determines whether a FOIA exemption applies only when the agency actually receives a FOIA request.  Until the presentation of such a request, the SEC makes no determination on whether the information it seeks would be protected from FOIA disclosure.  The SEC rules do contain a provision, however, whereby the SEC notifies those interested when it receives a FOIA request. Moreover, SEC counsel allegedly told Solv-Ex's counsel that Solv-Ex could in any event seek a protective order if the SEC's investigation went to litigation.  In seeming contradiction of this assurance, the SEC's Denver trial counsel stated in a letter to Solv-Ex's counsel:

> Notwithstanding the fact that the information submitted by Solv-Ex
> may be entitled to confidential treatment under the Freedom of
> Information Act, the Commission or a member of its staff may
> disclose such information, in the discretion of the Commission's
> staff, to any person during the course of any inquiry or investigation
> conducted by the staff, if the staff has reason to believe that the
> person to whom the record is disclosed may have further

> information about the matters related therein, and those matters appear relevant to the subject matter of the staff's inquiry. This use of information has been part of the Commission's policies for many years. Both for policy and legal reasons, I cannot agree to any limitation of the staff's discretion to use information gathered in the course of this investigation.

Letter from Leslie Hendrickson, SEC trial counsel, Aug. 11, 1997.

There appears to be some ambiguity, therefore, in the SEC's position regarding the preservation of confidentiality it will extend to Solv-Ex documents.

Solv-Ex puts forth a different picture. Solv-Ex's counsel states that the SEC counsel represented that until the completion of administrative proceedings, the SEC would not disclose Solv-Ex's confidential information, and that even after the conclusion of these proceedings, the SEC would not disclose the information to third parties without first giving Solv-Ex the opportunity to obtain a protective order or an injunction. Solv-Ex's counsel believes that the SEC intends to test the validity of information Solv-Ex provides by seeking the advice of third parties, including but not limited to Solv-Ex's commercial competitors. Solv-Ex has taken the position that disclosure to competitors of proprietary technology would threaten the viability of the company.

On August 22, 1997, Bankruptcy Judge Mark McFeeley held a hearing on the issue of confidentiality. At the hearing's conclusion, Judge McFeeley preliminarily enjoined the SEC from dispensing any information which could be considered proprietary information of the debtor to any of the witnesses that appear before the Commission, absent the execution of a confidentiality agreement of which Solv-Ex is a third-party beneficiary. Judge McFeeley further narrowed the scope of his ruling by limiting it to apply only to particular processes or other trade secret or proprietary information. Judge McFeeley reduced his order to writing and issued a written

preliminary injunction on September 25, 1997, whereby the Court enjoined the SEC

> from disclosing in any manner to any person or entity, regardless of affiliation, any information that could be considered Solv-Ex's confidential or proprietary information... without first providing said person or entity with a copy of this Order and obtaining a Confidentiality Agreement therefrom... [which] shall prohibit the disclosure of such information outside of the SEC investigation In the Matter of Solv-Ex Corporation... and shall include a provision making Solv-Ex a third party beneficiary thereof. Notwithstanding the foregoing, nothing in this Order shall be construed to preclude or limit disclosure by the SEC to another government agency so long as said agency agrees to itself safeguard Solv-Ex's confidential or proprietary information to the same extent as this order requires the SEC.

The SEC seeks leave to appeal this ruling.

### Discussion

A district court may, by statute, hear interlocutory appeals from bankruptcy court when a party so elects. 28 U.S.C. § 158(c) (1997). The SEC has exercised this statutory right, but must first seek leave of the district court to appeal. Id. § 158(a). Although the statute allows such appeals, the statute is silent on the standards for granting leave. Case law, however, provides guidance.

Generally, a district court should not grant leave to appeal from an interlocutory bankruptcy court order absent exceptional circumstances involving "a controlling question of law as to which there is substantial ground for difference of opinion, and [where] the immediate resolution of the order may materially advance the ultimate termination of the litigation." In Re Midgard Corporation, 204 B.R. 764, 769-70 (10th Cir. B.A.P. 1997); see also In re American Freight Systems, Inc., 194 B.R. 659, 661 (D. Kan. 1996) (citing cases). In addition, "the party seeking the interlocutory appeal bears the burden of demonstrating [those] exceptional

circumstances." Id.  Here, Appellant SEC has not met that burden.

In its motion, the SEC argues that it has broad powers to investigate violations of securities laws, and that no injunction should issue absent a finding that the government has or is about to engage in conduct in violation of the Constitution or of a statute or regulation.  The Court agrees that the SEC has, under law, broad investigatory powers.  There is no doubt that the Commission enjoys "considerable discretion in determining when and how to investigate possible violations of the statutes administered by the Commission," Securities and Exchange Commission v. Jerry T. O'Brien, Inc., 467 U.S. 735, 745 (1984), and that, within Fourth Amendment limitations, the Commission may, in its extensive powers, seek the "production of relevant materials by those who seem to have them." Securities and Exchange Commission v. Arthur Young & Company, 584 F.2d 1018, 1023-24 (D.C. Cir. 1978), cert. denied, 439 U.S. 1071 (1979).  Nevertheless, the Commission's powers are not without limits, and courts have accommodated competing interests by limiting the scope of administrative action.

Judge McFeeley's injunction in this case is not the first time a court has limited the power of an investigative agency.  For example, in General Motors Corporation v. Director of the National Institute for Occupational Safety and Health, Department of Education and Welfare, 636 F.2d 163 (6th Cir. 1980), cert. denied, 454 U.S. 877 (1981), the Sixth Circuit Court of Appeals agreed that "a District Court may, in fact, fashion protective orders when enforcing a... subpoena duces tecum as a means of safeguarding against the improper disclosure of confidential business information." Id. at 166.  In United States v. Exxon Corporation, 628 F.2d 70 (D.C. Cir. 1980), cert. denied, 446 U.S. 964 (1980) the Department of Energy had issued administrative subpoenas to conduct a study of motor fuel sales against three oil companies.  Id. at 72.  When those entities

challenged the subpoenas, the appellate court let them stand, but subject to confidentiality provisions expressly designed to prevent disclosure of proprietary or trade secret information from FOIA requests. Id. at 77-78.

In Arthur Young, which the SEC cites to support its position, the District of Columbia Court of Appeals, while enforcing the production of documents the Commission sought, nevertheless allowed Arthur Young & Company the opportunity to seek reimbursement from the Commission in the event costs associated with compliance with the Commission's subpoena became unreasonable. Arthur Young, 584 F.2d at 1034. The court had reservations, therefore, about the SEC's power to investigate, unchecked, the affairs of a company to the detriment of that company's financial health.

The SEC also cites to In Re 1820-1838 Amsterdam Equities, Inc., 191 B.R. 18 (S.D. N.Y. 1996) for support in its contention that Judge McFeeley has exceeded his authority in issuing the preliminary injunction. The Court does not find this case persuasive. In Amsterdam Equities, the City of New York sought to issue and enforce criminal summonses against the debtor for violations of the City's fire code. Id. at 19. The bankruptcy judge "enjoined the City for 45 days from taking any enforcement action against the debtor or its officers for failing to cure the violations of the City's building and fire codes, without prior authorization of the bankruptcy court." Id. at 20. The district court reversed, finding that the injunction interfered "with the City's ability to enforce local laws, a result that the bankruptcy laws clearly seek to avoid." Id. In the SEC's investigation of Solv-Ex, Judge McFeeley's order does not interfere with the SEC's investigation, it merely directs the SEC to take reasonable measures to protect the assets, if any, of the entity that it is investigating, and does not enjoin the SEC from action like the injunction in

Amsterdam Equities did.

The present case more closely resembles Equal Employment Opportunity Commission v. C& P Telephone Company, 813 F. Supp. 874 (D.D.C. 1993), where the EEOC sought to enforce an administrative subpoena issued in furtherance of an employment discrimination investigation. Id. at 875.  Faced with C & P Telephone's claim that the EEOC was seeking confidential information that should be kept from the union that represented its workers, that agency represented that subsequent to a FOIA request, it would review the information to determine its FOIA status.  The court found this response to be "an inadequate assurance that the information will not be disclosed."  Id. at 876-77.  The court therefore ordered the EEOC to enter into a confidentiality agreement that would protect the interests of C & P Telephone.  Id. at 877

Even assuming that the SEC will adhere to its own FOIA procedures, which assumption the SEC's letter of August 11, 1997 significantly undermines, the Court finds that prior instances of limitations which courts have imposed on an agency's investigations show that this case does not represent the exceptional circumstances necessary for the granting of leave to appeal.  Judge McFeeley's injunction strikes the proper balance between assuring both the continued viability of the SEC's investigation and of Solv-Ex's proprietary information.

The SEC has not made clear to this Court how requiring confidentiality agreements from its consulting experts would cause harm.  The SEC has simply alleged, without explaining, that "the process of taking testimony... is directly and adversely affected by the preliminary injunction."  The Court fails to understand how a confidentiality agreement, meant to protect the legitimate rights of Solv-Ex and the assets of the estate in bankruptcy, would impair the SEC's investigation.  Contrary to the SEC's assertions, the narrow injunction Judge McFeeley imposed

here does not diminish the SEC's power.  The agency is still able to obtain any and all information from Solv-Ex that it deems necessary, and it can still consult any and all experts that it wishes.  The agency is only enjoined from disclosing proprietary information in the course of its investigation absent a confidentiality agreement.

Judge McFeeley found that the injunction would not harm the SEC, since the injunction only applied to confidential and proprietary trade secret information and would not prevent the SEC from continuing its investigation.  This Court agrees.  The injunction the SEC seeks to overturn does not impede its investigation or its broad investigatory powers.  It merely directs the agency to observe certain safeguards lest in its zeal it abrogate the rights of Solv-Ex to protect proprietary information.  The narrow focus of Judge McFeeley's injunction suggests this Court should not grant leave to appeal.   Case law shows that adjudicated limitations on an agency's investigatory powers are not an unusual occurrence.  Furthermore, Judge McFeeley narrowly tailored his injunction both to preserve the SEC's right to investigate Solv-Ex and to protect the assets of that company.  The case at bar, therefore, does not present the type of exceptional circumstances which would lead the Court to grant a motion for leave to appeal an interlocutory order, contrary to "the judicial policy opposing piecemeal litigations and the disadvantages of delay and disruption associated with it."  American Freight System, 194 B.R. at 661.  This ruling being dispositive of the present matter, the Court will dismiss all other pending motions as moot.

**WHEREFORE,**

**IT IS HEREBY ORDERED** that the Appellant's Amended Motion for Leave to Appeal, filed November 28, 1997 **[Doc. No. 31]** be, and hereby is **denied**.

**IT IS FURTHER ORDERED** that Appellant's Motion for Leave to Appeal, filed

8

September 9, 1997 **[Doc. No. 1]**, Appellant's Emergency Motion for a Stay Pending Appeal and For An Expedited Appeal, filed September 11, 1997 **[Doc. No. 2]**, Appellee's Motion to Dismiss the Appeal Because of the Lack of an Appealable Order or in the Alternative to Hold the Appeal in Abeyance, Including the Motion for Leave to Appeal, until the Entry of a Written Order, filed September 11, 1997 **[Doc. No. 6]**, Appellee's Motion for Expedited Briefing and Expedited Ruling on the Motion to Dismiss and for Extension of Time, filed September 11, 1997 **[Doc. No. 7]**, Appellee's Motion to Strike or Hold as Inadmissible the Supplemental Declaration of Andra Ozols, filed September 29, 1997 **[Doc. No. 15]**, Appellee's Motion to Dismiss the First Appeal and All Related Documents for Lack of Jurisdiction or, Alternatively, as Moot Because of the Filing of the Second Notice of Appeal, filed October 10, 1997 **[Doc. No. 20]**, Appellant's Motion for Voluntary Dismissal of its September 10, 1997 Emergency Motion for Stay, filed November 10, 1997 **[Doc. No. 24]**, Appellant's Motion for Voluntary Dismissal of its September 8, 1997 Motion for Leave to Appeal, filed November 10, 1997 **[Doc. No. 26]**, Appellant's Motion for Voluntary Withdrawal of its September 8, 1997 Notice of Appeal, filed November 10, 1997 **[Doc. No. 28]**, Appellant's Amended Motion for an Expedited Appeal, filed November 28, 1997 **[Doc. No. 34]**, Appellant's Amended Emergency Motion for Stay Pending Appeal, filed November 28, 1997 **[Doc. No. 37]**, Appellee's Motion to Strike or Hold as Inadmissible the Supplementary Declaration of Andra Ozols, filed December 3, 1997 **[Doc. No. 40]**, and Appellant's Motion for Leave to Exceed Exhibit Page Limit, filed December 30, 1997 **[Doc. No. 43]** be, and hereby are, **denied as moot**.

                                                UNITED STATES DISTRICT JUDGE

| Counsel for Plaintiff-Appellee | Counsel for Defendant-Appellant |
| --- | --- |
| Margaret C. Ludewig , Esq.<br>John D. Phillips , Esq.<br>Hinkle, Cox, Eaton, Coffield & Hensley<br>PO Box 2043<br>Albuquerque, NM 87103<br>(505) 768-1500<br>Fax: 768-1529 | Richard M. Humes , Esq.<br>James A. Brigagliano , Esq.<br>Melinda Hardy , Esq.<br>Linda B. Stirling , Esq.<br>U.S. Securities & Exchange Commission<br>450 Fifth Street, NW<br>Stop 6-6<br>Washington, DC 20549 |

.

United States Trustee

Ron E. Andazola , Esq.
US Trustee Office
PO Box 608
Albuquerque, NM 87103
(505) 766-3106